[Civ. No. 4779.  First Appellate District, Division Two.—October 23, 1924.]

AMELIA LENCIONI, Administratrix, etc., Plaintiff, v. FIDELITY TRUST & SAVINGS BANK OF FRESNO (a Corporation), Respondent; MINNIE HELENE SETCHEL, Appellant.

[1] MORTGAGES — ADVANCES TO GROW CROP — RIGHT TO REPAYMENT — EVIDENCE—NONSUIT—EQUITY.—In this action for an accounting by the mortgagee under a crop mortgage and an accompanying trust agreement which provided, in effect, that any corporation, individual, or party making advances to the mortgagor, not exceeding a specified sum, for the purpose of producing, harvesting, packing, and marketing said mortgaged crop, should be repaid such sum out of the first proceeds of said crop, the evidence on behalf of the wife of said mortgagor was sufficient, as against defendant's motion for a nonsuit, to support her claim that she had made advances to the mortgagor, within the meaning and intent of the mortgage and trust agreement; and the fact that she did not advance the moneys directly, but that they were advanced by a corporation which held funds belonging to her, and which upon making such advances charged the same to her account, could not prejudice her in a court of equity.

(1) 11 C. J., p. 447, sec. 59.

APPEAL from a judgment of nonsuit of the Superior Court of Fresno County. J. E. Woolley, Judge. Reversed.

The facts are stated in the opinion of the court.

F. De Journel for Appellant.

George Cosgrave for Respondent.

LANGDON, P. J.—This appeal is by Minnie Helene Setchel from a judgment of nonsuit against her upon her cross-complaint. The case requires a somewhat extended statement of facts.

The action was originally commenced by B. Lencioni and after his death the administratrix of his estate was substituted in his place and stead. The Fidelity Trust &

Savings Bank of Fresno was made defendant and it was alleged that on March 10, 1921, one W. Flanders Setchel and said defendant entered into an agreement in writing, a copy of which agreement was attached to the complaint. The agreement was a mortgage of the crop to be grown during the year 1921 upon certain real property in the county of Fresno, state of California, known and hereinafter referred to as the "Carmelita Vineyard," for the purpose of securing a note for $100,000 given by said W. Flanders Setchel, and also "to secure the repayment of all advances made by any corporation, individual or party or their assigns to the mortgagor, not exceeding for such advances the sum of $30,000." In connection with this mortgage, the Fidelity Trust & Savings Bank executed a declaration of trust, wherein were recited the facts with reference to the said mortgage, note, etc., and wherein it was further "declared and agreed that said promissory note and said mortgage, as aforesaid, have been made, executed and delivered to said Fidelity Trust & Savings Bank, as Trustee, upon the following terms and for the following purposes, to-wit: 1. That any corporation, individual or party may, at any time during the life of this agreement, advance to said W. Flanders Setchel for the purpose of producing, harvesting, packing and marketing the crops described in said mortgage, a sum or sums not to exceed $30,000, as specified in said mortgage, and the said W. Flanders Setchel shall, after having received said loan, notify in writing the trustees herein of the corporation, individual or party making said loan, and in the event the payment of the $30,000 aforesaid is made in installments, the said trustee shall be notified in the same manner of the amount of each installment, and thereafter said corporation, individual or party shall be constituted the first beneficiary under the trust for the amount loaned not to exceed $30,000, and said sum or sums so advanced or loaned shall be repaid to the said corporation or individual or party out of the first proceeds of the said crop, after the payment of the proper charges of the trustee for its services hereinafter fixed and agreed upon; and after repayment to said corporation, individual or party of all sums so advanced as aforesaid under said mortgage, there shall be paid out of the next first proceeds of said crops the respective amounts due to the re-

spective consignment growers . . . as will appear from the books of the said Setchel Fruit Company.''

It was further alleged that the plaintiff had advanced and paid out for said W. Flanders Setchel, for the purpose of producing, harvesting, packing, and marketing the crops described in the mortgage, the sum of approximately $2,500; that the defendant had been notified in writing of said advances and at said time had in its possession sufficient money out of the proceeds of said crop to pay plaintiff's claim but refused to do so.

The Fidelity Trust & Savings Bank filed a cross-complaint, making numerous persons cross-defendants, with most of whom this appeal has no concern, because they disclaimed any rights whatsoever in the funds held by the bank and the action was dismissed as to them. In this cross-complaint the Setchel Fruit Company, a corporation, a bankrupt, was made a defendant and it was alleged that it had been duly adjudged a bankrupt and that a trustee in bankruptcy had been appointed. It was also set forth that during the year 1920, W. Flanders Setchel owned a large part of the capital stock of the Setchel Fruit Company, which had become indebted to various persons in the sum of over $86,000; that said W. Flanders Setchel, during said time, was the owner of the land described in the aforementioned mortgage and declaration of trust and that these instruments were executed for the purpose of securing to the creditors of the Setchel Fruit Company the amount of their claims; that the said persons, firms and corporations to whom the Setchel Fruit Company was indebted during the year 1920 and for whose benefit the mortgage and declaration of trust were executed, appointed said cross-complainant their trustee to receive from the Setchel Fruit Company and from W. Flanders Setchel the amounts due them under the terms of the said crop mortgage; that pursuant to said crop mortgage, the cross-complainant has collected the sum of $27,967.17 and holds the same as trustee for the persons, firms, and corporations to whom the Setchel Fruit Company became indebted during the year 1920; that since the execution of said crop mortgage and declaration of trust and prior to the adjudication of bankruptcy of the Setchel Fruit Company, said company notified defendant that it had advanced

to W. Flanders Setchel for the purpose of producing, harvesting, packing, and marketing the crops described in said mortgage, the sum of $28,662.29, under and by virtue of the terms of said declaration of trust and that it was entitled to reimbursement of the said amount from the said sum in the hands of cross-complainant. Because of this fact, it is alleged, upon information and belief, that the trustee in bankruptcy of said Setchel Fruit Company claims the money in the hands of the cross-complainant. It is also alleged, upon information and belief, that the defendant J. L. Taylor Company claims to have advanced a sum in excess of $30,000 for the harvesting and marketing of said crops and to be entitled to reimbursement therefor from said trust fund.

Similar allegations are made, upon information and belief, respecting various cross-defendants, including the plaintiff B. Lencioni and the appellant here, Minnie Helene Setchel. Said cross-complainant prayed that the several defendants be required to set forth the nature of their claims against cross-complainant and that an accounting between said cross-complainant and cross-defendants be had and that the conflicting claims of said cross-defendants in and to the fund in the hands of said cross-complainant be determined.

All of these defendants disclaimed any interest in the fund except B. Lencioni, whose interest was recognized and protected by the judgment entered herein with the consent of all the parties, and Minnie Helene Setchel, who is appealing from a judgment against her entered upon the granting of a motion for a nonsuit made at the conclusion of her proof.

Minnie Helene Setchel answered the cross-complaint of Fidelity Trust & Savings Bank. She admitted the making of the crop mortgage and declaration of trust and the facts with relation thereto heretofore set forth, and admitted that at the time said instruments were executed said W. Flanders Setchel was the record owner and in the possession of the real property described therein, but denied that he was the equitable or beneficial owner thereof. She alleged that she had been, ever since March 22, 1918, the sole and separate owner and in possession of 91 acres out of approximately 325 acres comprising the property known as the "Carmelita

Vineyard'' as her sole and separate property; that during
the years 1918, 1919, and 1920 she had raised and harvested
certain crops of grapes upon said property and consigned
the same for sale for her account to the Setchel Fruit Com-
pany, of which corporation W. Flanders Setchel was then
president and chief stockholder; that at that time W. Flan-
ders Setchel was her husband; that said crops were duly
sold and paid for and the proceeds thereof credited to her
account upon the books of the Setchel Fruit Company, which,
accordingly, showed a credit in her favor of $38,182.99,
legally due and payable to her as her separate property;
that in 1920 she demanded of the Setchel Fruit Company
the proceeds of her crops so sold and that, thereupon, W.
Flanders Setchel, the president of said corporation, re-
quested her to permit him to use part of said money,
to wit, $30,000 thereof, as an advance or loan, for the pur-
pose of making provision for the labor and supplies needed
in the cultivation of the crops for the year 1921 upon the
''Carmelita Vineyard'' lands. That she and W. Flanders
Setchel came to an agreement whereby it was understood
between them as follows: ''That she would make the said
loan and advances out of her said funds, so held for her
as aforesaid, providing that said W. Flanders Setchel would
first, and without delay, give to a trustee, to-wit, the Fi-
delity Trust & Savings Bank of Fresno, a mortgage covering
the crop of grapes, raisins and fruit grown and produced
during the year 1921 upon the portion of said Carmelita
Vineyard hereinbefore described in this paragraph, to-
gether with a declaration of trust executed by the said W.
Flanders Setchel and the Fidelity Trust & Savings Bank,
wherein it would be provided that the said W. Flanders
Setchel should cause the crops and the proceeds of crops
raised on that certain portion of the Carmelita Vineyard
during the season and year 1921, to be turned over to the
said Fidelity Trust & Savings Bank of Fresno to be held
by it in trust, and that under the terms and conditions of
the said trust, said trustee should, out of the first moneys
received by said trustee out of the proceeds of the said
crops, reimburse said Minnie Helene Setchel for her said
loan and advances so made, and thereupon she then au-
thorized the payment of said advances by the Setchel Fruit
Company by and under the direction of its president, W.

Flanders Setchel, out of her consignment and trust moneys in the treasury of the said company, under the terms and conditions, which, as it was then agreed, were to be thereafter, forthwith, reduced into writing and embodied in the said declaration of trust, and under no other terms or conditions, and said advances were to be only such as would be absolutely necessary for the cultivation and raising of said crops of 1921, and were not to exceed the total sum of $30,000; that, thereafter, and beginning on the 27th day of December, 1920, and from that date until the 2d day of October, 1921, and under the terms and conditions and during the life of the trust agreement herein mentioned and referred to, the said advances were from time to time made on and for the account and on behalf of said Minnie Helene Setchel and out of her moneys, on the days and dates shown in a bill of particulars . . . annexed . . . to this answer and cross-bill; said advances so made aggregated the total sum of $29,331.77. . . . By means of the said advances the said crops of 1921 on said portion of the Carmelita Vineyard . . . were caused to be raised and were thus made available.''

Minnie Helene Setchel further alleged that in October, 1921, she was informed by W. Flanders Setchel that he had made a demand upon the trustee under said trust agreement to pay to her the amount of money so advanced by her, which he, at that time, asserted to be but $15,000; that in November, 1921, an interlocutory decree of divorce was granted to her from the said W. Flanders Setchel, by the superior court, for the state of California, in and for the county of Fresno; ''that on or about the said month of October, 1921, said Minnie Helene Setchel requested said W. Flanders Setchel to render to her a detailed and itemized account of the advances made for the purposes aforesaid, on her behalf, out of her said consignment moneys, and further requested him to do, in compliance with the terms of his agreement with her, all such acts as may be necessary to cause to be repaid to her, out of the moneys realized from . . . the proceeds of the crops of 1921 on said Carmelita Vineyard, deposited in trust with the Fidelity Trust & Savings Bank, the amount of the advances so made, as disclosed by the said accounting, and at the same time also requested the said W. Flanders Setchel to likewise comply with the terms of the Trust Agreement, copy of which she then

had obtained in that, to-wit, that he should give an itemized
account and give all due notices to and finally make a formal
request upon the Fidelity Trust & Savings Bank for the
repayment by it to her of the said moneys, but about that
time and immediately prior thereto and for some time there-
after, domestic difficulties arose between her and the said
W. Flanders Setchel . . . which difficulties later culminated
and resulted in said divorce proceedings, and in said judg-
ment of divorce between said Minnie Helene Setchel and said
W. Flanders Setchel . . . and then and thereafter said W.
Flanders Setchel refused to render to her an itemized ac-
count and refused to make the formal demand hereinbefore
mentioned upon the Fidelity Trust & Savings Bank, for the
repayment to her of her moneys, save and except the $15,-
000 heretofore mentioned, which said sum was less than was
really advanced by and due to her at that time, by reason
of the said advances, and notwithstanding her request so
made by her to the said W. Flanders Setchel for a complete
compliance with the terms and conditions of his agreement
with her, and with the terms and conditions of the trust
agreement, said W. Flanders Setchel failed, refused and
neglected and still refuses to demand from the said trustee
the repayment of the real and true amount of the advances
made by her, and until about the said month of October,
1921, she believed that said W. Flanders Setchel had com-
plied with his promises and agreement regarding the neces-
sary steps to be taken by him in order to cause the said
advance moneys to be repaid to her in full, and until about
said date she never knew that the said W. Flanders Setchel
had failed in his promise and agreement to make such de-
mand as aforesaid, and because of the refusal of the said
W. Flanders Setchel to account to her, she never knew
until about the 30th day of December, 1921, what was the
exact amount of the advances made out of her funds. . . .
That after the said W. Flanders Setchel had refused to ren-
der an itemized account to said Minnie Helene Setchel of
the advances made on her behalf out of her moneys, and
after the said W. Flanders Setchel had refused to notify
the trustee of the amounts paid out of her moneys as afore-
said and had refused to make a demand and request . . .
for the repayment thereof to her, in accordance with the
terms of the trust agreement, she . . . by and through her

attorney . . . notified said trustee . . . that she was the individual . . . who had made the advances to the mortgagor and referred to in the mortgage of said W. Flanders Setchel, and . . . in the declaration of trust, and she then made a formal demand for the payment to her of the sum of $27,000, or for the payment . . . of the sum of $15,000, but said defendant, Fidelity Trust & Savings Bank of Fresno has refused and still refuses to pay to her, or to her agents . . . said sum or sums or any part . . . thereof . . . notwithstanding that the said Fidelity Trust & Savings Bank, as she is now informed and believes and therefore alleges, had then received from the proceeds of said crops and now has in its possession sums aggregating over $27,000.''

Said Minnie Helene Setchel in her said answer and cross-complaint then offers to pay to said trustee the amount of its charges and expenditures in the administration of the trust and asks for an accounting of the proceeds of said crops for the year 1921 and of the moneys advanced by her for the raising and harvesting of the same and for a judgment in her favor for the amount so expended after the payment of the expenses and charges for the administration of the trust.

The Fidelity Trust & Savings Bank denied, upon information and belief, most of the allegations made by Minnie Helene Setchel and alleged that at all times since the execution of the crop mortgage she had knowledge thereof and of its terms and conditions and that it was provided therein that the said W. Flanders Setchel should, after having received any loan or advancement, notify in writing the Fidelity Trust & Savings Bank of the party making said loan, and notwithstanding said knowledge, said Minnie Helene Setchel at no time caused the said W. Flanders Setchel to notify the trustee of her said advancements and at no time gave such notice on her own behalf; that notice was duly given to said bank that Setchel Fruit Company had made advances in the amount of $30,000 for the purposes specified in said declaration of trust and that said Bank had no notice and did not know at any time prior to December 1, 1921, that Minnie Helene Setchel had made or claimed to have made the advances set out in her cross-complaint and believing that the Setchel Fruit Company was the only per-

son or corporation that had made any such advances to said company, and that if the said Bank had had knowledge that Minnie Helene Setchel claimed to have made such advances before the Setchel Fruit Company was reimbursed, the said Bank would not have reimbursed the Setchel Fruit Company.

Minnie Helene Setchel proved, substantially, all the allegations of her pleading. As previously stated, all the defendants, except Lencioni and Minnie Helene Setchel, including the trustee in bankruptcy of the Setchel Fruit Company, filed disclaimers of any interest in the subject of the action. After hearing the proof offered by Minnie Helene Setchel, the trial court granted the motion of the Bank for a nonsuit against her upon the ground that she had not proven facts entitling her to relief.

The foregoing lengthy statement of facts presents but one question upon this appeal: Upon a motion for nonsuit, all evidence and inferences therefrom being regarded most favorably for the appellant and the Bank not having proven any of its allegations, was the transaction between Mrs. Setchel and the man who was at that time her husband, W. Flanders Setchel, whereby he obtained the use of funds for raising and harvesting the crop upon a portion of Carmelita Vineyard, equivalent, in law and equity, to an actual advance of said funds by her so as to bring her within the terms of the trust declaration previously discussed? As we have said, Mrs. Setchel proved, substantially, the allegations of her complaint, and in most details of the proof there was corroborating evidence by several witnesses. W. Flanders Setchel, from whom she had been divorced at the time of the trial, testified: That the crops belonging to the appellant were handled in the years 1918, 1919, and 1920 by the Setchel Fruit Company "on consignment" and "the proceeds were credited on the books"; that the total amount credited to Mrs. Setchel for these years was "some $200 or $300 short of $38,000," and that no portion of that amount of money was ever paid in cash or otherwise to Mrs. Setchel; that in the latter part of 1920, he had a conversation with Mrs. Setchel with reference to the disposition of this money; that Mrs. Setchel was "very insistent upon receiving payment of her moneys"; that "he wanted the money to stay—so he could use it"; that he "asked her if some arrangement could be made whereby it was not to be paid to her just at

that time''; that he was trying to rearrange the affairs of
the Setchel Fruit Company in such a way as to relieve it
of the embarrassment under which it was then struggling;
that he ''asked her if she would withhold from insisting
upon the payment of the moneys due her then for the time
being''; that Mrs. Setchel was induced by him ''to allow
the money to remain there''; that at the time he requested
Mrs. Setchel to let this money remain with the company,
''It was understood'' that the money would be ''repaid out
of the proceeds of the crops of the following year and in
making the arrangements to secure certain creditors of the
Setchel Fruit Company I made reservation in order to pro-
tect that money and induced her to agree to that.'' ''What
was to be done with this money which I retained in my
hand was to take care of the property and develop the crops
of 1921.'' ''The Setchel Fruit Company's books will show
the amount of money so belonging to Mrs. Setchel which
was used for the purpose of making the crop of 1921.'' Mr.
Setchel also testified that he had told counsel for Mrs.
Setchel of this agreement with Mrs. Setchel. Counsel for
Mrs. Setchel testified that during 1920 he had several con-
versations with Mrs. Setchel with reference to the money
due to Mrs. Setchel. In one of these conversations Mr.
Setchel stated that he had made arrangements with the bank
whereby the bank would make him a substantial loan, but
that if the loan should not be made by the bank, Mrs. Setchel
was to advance the money and wait for the payment of it
until the crop of 1921 came in, when the first moneys out
of the crop of 1921 would be used to pay the amount that
would be charged for the expense in the Carmelita Vineyard
account. The bank loan in contemplation was never made.
Mr. Setchel also stated to said counsel that ''whatever
moneys he had to take from her account would be pro-
tected by that agreement of trust and the chattel mortgage.''
Counsel testified further that ''it was absolutely clear and
satisfactory to him (Setchel) that she (Mrs. Setchel) would
be repaid at the time that the proceeds of the 1921 crop
from the Carmelita would be received for the advances made
and charged to the Carmelita account for raising it.'' At
one time during 1921 the witness asked Mr. Setchel how
much of Mrs. Setchel's money had been expended and he

told the witness "about $15,000 or something like that"; that "the statement made in the conversation was that Mr. Setchel would probably have to borrow that much money in order to buy the crop and that whoever he borrowed the money from should be entitled to the first repayment of it. After that time Mr. Setchel borrowed money from Minnie Helene Setchel; he did not simply continue to owe her the money he had borrowed. . . . Prior to that agreement, there was $76,000 due her on the books; after that agreement and after it was paid there was $76,000—less the amount that was charged to her on the books—or only $38,000 left of a balance to her credit . . . that is how she paid it, just the same as you paid an account in the bank out of your check. . . . It wasn't paid to her but it was paid in money for the purpose of raising the crop and she was charged in the account and consequently it curtailed her balance to the extent of $38,000, the same as if I drew a check on the bank when I have $100 and draw $50, they only owe me $50.   The expenses incurred in producing the 1921 crop in the Carmelita Vineyard, charged against the Carmelita Vineyard where the credits for her crop were entered, in that same account 'Carmelita Vineyard Account' that is there in these books."   "There is only a balance of $38,000 and that is all she could enter a claim for against the Setchel Fruit Company."

Mrs. Setchel's testimony appears in the record in the form of a deposition, wherein she says: "I think it was in the early fall of 1920 that I made inquiries about the proceeds of these 91½ acres of the Carmelita, but I had been asking for money from my place the whole year.   I never got any . . . I asked him several times and then he came to me afterwards and asked me if I would allow him to use that money for farming the Carmelita the following year . . . when I asked him for some money he came back and asked me to advance him—to let him use the money, rather, that he owed me, to crop the Carmelita now; he must have told me about the right amount then because he said it would cost something like $30,000. . . . I agreed that he could have the money to farm the Carmelita and he was to give a mortgage to the bank and there was to be a trust deed in which I was to be paid back first of all."

[1]    We are disposed to agree with the appellant that there is enough in the foregoing testimony to support Mrs. Setchel's claim that she had made advances to W. Flanders Setchel, within the meaning and intent of the mortgage and declaration of trust heretofore discussed upon a motion for nonsuit and with no evidence before the court to contradict or destroy the force of the foregoing testimony. It is to be remembered that the Setchel Fruit Company was not the owner of the land comprising the Carmelita Vineyard. Upon the company's books and in legal effect, the corporate funds were not used to develop a crop upon land not owned by said company, but such funds were used in reducing the company's indebtedness to one of its consignment creditors, Mrs. Setchel—a legitimate use of such funds—and then W. Flanders Setchel, individually, took this money, so paid by the company, to Mrs. Setchel, under a private arrangement with her, and used it to develop a crop upon the Carmelita Vineyard which he had mortgaged in advance for the benefit of the creditors of the Setchel Fruit Company. The fact that this was accomplished in one instead of in two steps surely cannot prejudice Mrs. Setchel in a court of equity. She is, obviously, a woman unacquainted with business methods and she had no voice in the selection of the method adopted in carrying out the scheme agreed upon.

So far as the record shows, the creditors of the Setchel Fruit Company had no claim upon the proceeds of the crop to be raised on Mrs. Setchel's land in 1921, but her husband's credit was seriously involved, and she not only consented to the mortgage of her future crop, but also to pay the expenses of raising the same out of moneys due her, provided only that this expense should be repaid to her out of the crop before the money was turned over to the creditors. The fairness of this demand is obvious, and it appears in the record that if the crop had not been a failure, it would have paid the expense of its production and furnished ample money to satisfy all creditors. The incidental unfortunate circumstance that the crop was a failure does not change the equity of allowing the expense of its production to be paid first out of its proceeds.

Furthermore, at this point in the proceedings, when it is to be remembered that the bank has not put in its case,

there is nothing in the record to show that the creditors are objecting to Mrs. Setchel's claim.

However, the bank should have an opportunity to prove, if it can, its allegations regarding estoppel, and to disprove, modify, or explain, by other evidence, the matters heretofore stated which Mrs. Setchel has introduced into the record. Our discussion of the evidence is merely in the light of the order granting the motion for nonsuit, when the evidence must be viewed most favorably for Mrs. Setchel; after the bank has put in its case, the effect of the record may be somewhat different, but as it stands now, we are of the opinion that the motion for nonsuit was improperly granted.

The judgment is reversed, with directions to the trial court to deny the motion for nonsuit and proceed with the trial of the cause.

Sturtevant, J., and Nourse, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1924.

All the Justices concurred.